UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

D'ANGELO ROYSTER,

                Plaintiff,                        Case No. 2:10-cv-222

v.                                       Honorable Gordon J. Quist

T. PERTTU, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff D'Angelo Royster, an inmate currently confined at the Gus Harrison Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Resident Unit Manager T. Perttu, Assistant Resident Unit Manager Brandon Sweeney, Warden Gary Capello, and MDOC Director Patricia Caruso.[1]

Plaintiff's complaint alleges that on August 17, 2010, he gave Defendant Sweeney an envelope addressed to the U.S. Attorney General's Office for mailing. However, Defendant Sweeney informed Plaintiff that his mail did not qualify as legal mail and returned the envelope, which had been opened. On August 8, 2010, Plaintiff gave Defendant Perttu a "Petition to the Governor's Office" for mailing, but Defendant Perttu told Plaintiff that the petition was not legal mail. Defendant Perttu returned Plaintiff's opened mail. Plaintiff makes a conclusory assertion that he was engaged in pending litigation at the time, and that his outgoing mail was related to that litigation.

---

[1] Plaintiff also names "Unknown Parties" as Defendants. However, because such individuals cannot and have not been served, they are not proper parties to his action.

Plaintiff alleges that on August 30, 2010, Defendants Capello and Caruso were notified that their policy of allowing staff to ration envelopes was being used to deny Plaintiff's ability to access the courts.  Plaintiff states that Defendants Perttu and Sweeney were denying him envelopes as the result of a memo, and that the failure to intervene promoted this custom.

Plaintiff claims that Defendants' actions violated his rights under the First Amendment to the United States Constitution.  Plaintiff is suing Defendants in their individual capacities and is seeking damages.  Plaintiff also seeks to be transferred to a "regional facility."

Presently before the Court is the Defendants' Motions to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and for Summary Judgment, pursuant to Fed. R. Civ. P. 56.  (Docket #22 and #25.)  Plaintiff has filed a response and the matter is ready for decision.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is

sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Sweeney and Perttu state that they are entitled to summary judgment because their handling of Plaintiff's mail did not violate the First Amendment. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Accord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that Defendants' conduct caused an actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how

he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

Defendants Perttu and Sweeney note that prisoner mail is regulated by MDOC Policy Directive 05.03.118, which they attach as an exhibit to their brief. In pertinent part, the policy states:

> A prisoner in a CFA facility shall be permitted to send air, certified and foreign mail, and mail that weighs more than two ounces, via disbursement. Mail that a prisoner is sending via disbursement that is clearly identified as being to a court, an attorney, or a party to a lawsuit due to pending litigation, including the initial filing and service of a lawsuit, shall be processed as soon as possible. This includes mail being sent via disbursement to a court, an attorney, or a party to a lawsuit pursuant to Paragraph I or J. An expedited process for such mail shall be established by the CFA Deputy Director; the expedited process also shall be available to prisoners to send mail to a court or court reporter to request a transcript of the prisoner's court proceeding and to legal service organizations (e.g., American Civil Liberties Union, State Appellate Defender Office, Michigan Appellate Assigned Counsel System). The prisoner may be required to present the mail unsealed to staff to verify that it qualifies for expedited handling. In such cases, staff shall read only those sections of the mail that are necessary to make this determination; the mail shall not be read in its entirety.

Policy Directive 05.03.118, ¶ O (eff. 09/14/09) (Defendants' Exhibit 3). The policy also provides that before sending out mail, prisoners are required to sign a disbursement authorization:

> If it is determined that a prisoner's outgoing mail cannot be processed due to insufficient postage, failure of the prisoner to sign a disbursement authorization, or other reason unrelated to the content of the mail, the mail shall be searched in the same manner as incoming mail prior to its return to the prisoner.

*Id.* at ¶ U.

- 4 -

Defendant Perttu attests that all of the mail addressed to the Governor's Risk Management Office that he received from Plaintiff using the expedited mail form, was already sealed when he received it. Because this mail had not been signed or dated in Defendant Perttu's presence, it was sent to the mail room to be processed on regular disbursement. On August 9, 2010, Plaintiff gave Defendant Perttu expedited mail to be sent to Karry Moss at the ACLU. This mail was sealed and had not been signed and dated in Defendant Perttu's presence. Therefore, the mail was denied as expedited and was processed as regular mail and sent out. On August 20, 2010, Plaintiff gave Defendant Perttu mail addressed to Karry Moss at the ACLU on a regular disbursement which Defendant Perttu signed. This mail was sent for processing. On August 24, 2010, Plaintiff gave Defendant Perttu sealed mail addressed to the Jane Martinen Access to Justice Center on a regular disbursement. This mail was processed and sent out. Also on August 24, 2010, Plaintiff gave Defendant Perttu mail addressed to the ACLU office in Washington using the expedited legal mail form. This mail was sealed and had not been signed and dated in Defendant Perttu's presence. Therefore, the mail was denied as expedited and was sent to be processed as regular disbursement. On the same date, Plaintiff gave Defendant Perttu mail addressed to the Access to Justice Center on a regular disbursement, which was signed by Defendant Perttu and sent for processing. Defendant Perttu asserts that these incidents demonstrate that on the occasions Plaintiff has given him mail that fits the criteria for legal mail and follows the proper procedure for processing, the mail has been sent out in accordance with MDOC Policy Directive 05.03.118. Defendant Perttu further states that the policy has been explained to Plaintiff on numerous occasions, but Plaintiff continues to be noncompliant. (Defendants' Exhibit 1, ¶¶ 3-10.)

Defendant Perttu attests that a review of Plaintiff's mail account shows that on August 5, 2010, he was issued four legal size envelopes, ten regular envelopes, and ten sheets of

carbon paper.  On August 19, 2010, Plaintiff was issued two legal size envelopes, and on August 24, 2010, Plaintiff was issued three legal size envelopes.  (Defendants' Exhibit 1, ¶ 11.)

Defendant Sweeney attests that he cannot recall Plaintiff ever giving him mail addressed to the U.S. Attorney General on August 17, 2010, in which processing was denied as alleged by Plaintiff.  However, the record shows that between August 1 and December 17 of 2010, Plaintiff sent out 23 "legal" mailings and 14 "regular" mailings.  Of the 23 "legal" mailings, six were completed, authorized by Defendant Sweeney, and sent out using the expedited mail process: on August 18, 2010, to the U.S. District Court, on August 18, 2010, to Attorney General Mike Cox, on August 27, 2010, to Attorney General Mike Cox, on August 27, 2010, to Judge Brian R. Sullivan, on August 30, 2010, to Patricia Caruso, and on November 29, 2010, to the Clerk of the Court.  The remaining 17 "legal" mailings were approved for legal postage and were sent out of AMF, but they were not sent out as expedited mail.  (Defendants' Exhibit 2, ¶¶ 3-4.)

As noted above, in order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391

(6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

      Defendants assert that Plaintiff has not shown that their alleged mishandling of his mail or rationing of envelopes interfered with his ability to pursue a direct appeal, a habeas corpus application, or a civil rights claim. Therefore, Defendants Perttu and Sweeney state that they are entitled to summary judgment on Plaintiff's access to courts claim. In response to this claim, Plaintiff states that he has been prevented from sending mail to the Governor's office, the ACLU, and to other attorneys. However, Defendants are correct that Plaintiff fails to relate this mail to a direct appeal, a habeas corpus application, or a civil rights claim, or to allege any injury to such an action. Moreover, the record shows that Plaintiff has sent mail to the above addressees on multiple occasions. Therefore, the undersigned concludes that Defendants Perttu and Sweeney are entitled to summary judgment on Plaintiff's access to courts claim.

      Defendants Perttu and Sweeney further state that they are entitled to summary judgment on Plaintiff's more generalized "legal mail" claim. Plaintiff's claim regarding the application of the MDOC mail policy, which requires prisoners to submit unsealed mail, does not support a First Amendment claim. A prisoner retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system [ ]." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir.1986) (*quoting Pell v. Procunier,* 417 U.S. 817, 822); *see Turner v. Safley,* 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from

the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (*citing Pell,* 417 U.S. at 822-823; *Procunier v. Martinez,* 416 U.S. 396, 412 (1974)).

Interference with a prisoner's outgoing mail is constitutional if it is reasonably related to legitimate penological interests. *Thornburg v. Abbott,* 490 U.S. 401, 413 (1989). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner v. Safley,* 482 U.S. 78, 89-90 (1987).

It is apparent from the record that Plaintiff knew how to submit sealed mail under applicable MDOC procedures. The Michigan Department of Corrections does not limit the amount of outgoing mail a prisoner can send, and it generally allows prisoners to send sealed mail. *See* MDOC Policy Directive 05.03.118, ¶¶ Q, R (eff. 09/14/09) (Defendants' Exhibit 3). In circumstances where there is a significant potential for systemic abuse by prisoners, they are required to submit mail unsealed. In situations where a prisoner is being loaned money or is asking for expedited mail handling, the MDOC requires a verification of the need for such services. In the vast majority of cases, the MDOC requires prisoners to pay for the cost of postage. *Id.* at ¶ N. The MDOC loans indigent prisoners the equivalent of postage necessary for mailing 10 first class letters per month. Once a prisoner has used this postage, he may qualify for a postage loan if the mail he

is seeking to send qualifies under the policy.  In order to determine if this is the case, the inmate is required to submit the mail unsealed.  Prisoners must also submit mail unsealed if they are requesting expedited legal mail handling.  *Id.* at ¶¶ J-M, O.  Without this requirement, the expedited mail program would be subject to abuse and the purpose of providing this service would be defeated.

As set forth above, the record in this case shows that Defendants Sweeney and Perttu enforced MDOC mail policy when Plaintiff attempted to send expedited legal mail that had already been sealed.  Pursuant to policy, sealed mail may not be processed as "expedited" mail.  The undersigned concludes that pursuant to *Turner v. Safley*, the policy is reasonably related to legitimate penological interests.  Moreover, although Plaintiff claims that Defendants Sweeney and Perttu arbitrarily refused to send mail to the ACLU or the Attorney General, he fails to allege any specific facts to support this assertion.  As noted above, Plaintiff has sent mail to the ACLU, the Attorney General's office, and to other organizations on multiple occasions.  Therefore, the undersigned recommends that Defendants Sweeney and Perttu be granted summary judgment on Plaintiff's claims regarding their handling of his outgoing mail.

Defendants Caruso and Capello state that they are entitled to dismissal because they were not personally involved in the alleged misconduct.  Liability under Section 1983 must be based on more than merely the right to control employees.  *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325.  A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.),

*cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

        Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights.  *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985).  However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct.  *Leach*, 891 F.2d at 1246.  Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.  *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).  In addition, plaintiff must show that defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991).  In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability.  *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988).  Finally, supervisory liability claims cannot be based on simple negligence.  *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

        As noted by Defendants Capello and Caruso, Plaintiff has not alleged facts establishing that they were personally involved in the activity which forms the basis of his claim.

Plaintiff asserts that Defendants Capello and Caruso were notified about the alleged misuse of the mail policy, and that they failed to take any corrective action. In addition, Plaintiff claims that the mail policy is vague, which makes it subject to abuse. However, Plaintiff fails to specifically allege any facts in support of this claim. The only roles that Defendants Capello and Caruso had in this action involve the denial of administrative grievances or the failure to act. Defendants Capello and Caruso cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the undersigned concludes that Plaintiff's claims against Defendants Capello and Caruso are properly dismissed for lack of personal involvement.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court

- 11 -

can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants, motions for dismissal and summary judgment. Accordingly, it is recommended that Defendants' motions (docket #22 and #25) be granted and that this case be dismissed in its entirety. In addition, should the court adopt the report and recommendation in this case, Plaintiff's motion for excusable neglect (docket #39) is properly denied as moot.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  February 16, 2012